**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                                              |     |                  |
| -------------------------------------------- | --- | ---------------- |
|                                              | :   |                  |
| **RUSSELL S. CARFAGNO,**                     | :   |                  |
|                                              | :   |                  |
| **Plaintiff,**                               | :   |                  |
|                                              | :   | **CIVIL ACTION** |
| **v.**                                       | :   |                  |
|                                              | :   | **NO. 14-4856**  |
| **SCP DISTRIBUTORS, LLC d/b/a POOLCORP,**    | :   |                  |
|                                              | :   |                  |
| **Defendant.**                               | :   |                  |

**<u>MEMORANDUM</u>**

**Tucker, C.J.**                                                    **February 10, 2016**

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. 20),
Plaintiff's Response in Opposition (Doc. 21), and Defendant's Reply to Plaintiff's Response in
Opposition (Doc. 22).  Upon consideration of the parties' submissions and exhibits and for the
reasons set forth below, this Court GRANTS Defendant's Motion.

**I.      FACTUAL BACKGROUND**

In his Amended Complaint, Plaintiff Russell S. Carfagno ("Plaintiff" or "Carfagno")
alleges that Defendant SCP Distributors, LLC d/b/a PoolCorp ("Defendant" or "Poolcorp")
violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and the
Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.* ("PHRA").  The material, undisputed
facts follow.

In 2004, Plaintiff was hired as an Operations Manager at the Defendant's Trooper,
Pennsylvania location.  Around 2005, Plaintiff began reporting to John Zita ("Zita"), the Branch
Manager at the Trooper branch.  Around 2007, Defendant's Trooper branch closed and relocated

to Montgomeryville, Pennsylvania.  At the Montgomeryville branch, Plaintiff remained in his role as Operations Manager and Zita remained in his role as Branch Manager.  Zita reported to the Regional Manager.  The Regional Manager position was held by Dave Nicastro who was subsequently replaced with Charlie Gephardt in 2008.  In 2011, Paul Fowler ("Fowler") assumed the role of Regional Manager.  In summation, "the hierarchy at the Montgomeryville branch was as follows: warehouse associates/employees reported to the Operations Manager; the Operations Manager reported to the Branch Manager; the Branch Manager reported to the Regional Manager; and the Regional Manager reported to corporate headquarters in Covington, Louisiana."  Def. Stmt. of Undisputed Facts, ¶ 11, Doc. 20.

In 2005, Plaintiff began using a company-owned fuel card, which then-Branch Manager Zita had given him.  Plaintiff never used the fuel card to buy gas for company-owned delivery trucks.  Rather, Plaintiff used the gas card for personal use.  Since his job required him to be physically present at the Montgomeryville location 85% of the time, Plaintiff was not required to do any significant traveling in connection with his employment.

At Poolcorp, an employee's unauthorized use of a company-owned fuel card is grounds for termination.  Additionally, Poolcorp has a Vehicle Agreement that was accessible via the intranet up until the time of Plaintiff's termination, which provides that "routine audits of the fuel cards would be performed by the Regional Manager, *i.e.* Paul Fowler."  Def. Stmt. of Undisputed Facts, ¶¶ 21–22 (emphasis in original); Def. Mot. for Summ. J., Exh. 4, at 6, Doc. 20.  The Poolcorp Vehicle Agreement also states that "[v]iolation(s) of [the] provision [that limits the purchase of fuel to Poolcorp vehicles] may result in employment disciplinary action, up to and including termination."  Def. Mot. for Summ. J., Exh. 1, at 6.  In addition to the Vehicle Agreement, Poolcorp has a "Fleet Program Overview DOT Commercial Vehicles" which also

2

provided that "only fuel can be purchased at the fuel stations and only for authorized company vehicles." *Id.* Exh. 2, at 13 (emphasis omitted).

At some point, Fowler performed an audit of the company fuel cards.  Plaintiff avers that, prior to his termination, Fowler approached Zita and inquired about Plaintiff's use of the fuel card.  Zita then informed Plaintiff that Fowler began questioning him about Plaintiff's use of the card.  Though Plaintiff told Zita to tell Fowler the truth regarding the fuel card, "Mr. Zita indicated that he would think of something."  Def. Stmt. of Undisputed Facts, ¶ 31.

After conducting an investigation, Fowler determined that Plaintiff used the card without authorization and subsequently terminated Plaintiff on September 13, 2012.   Plaintiff, however, "believes that Mr. Zita falsified documents and lied to Mr. Fowler about Mr. Carfagno's use of the company gas card in an effort to save his own job." *Id.* ¶ 27.   Nonetheless, Plaintiff concedes that "Mr. Fowler fired Mr. Carfagno because Mr. Fowler did not believe that Mr. Carfagno had authorization to use the company fuel card." *Id.* ¶ 38.  Plaintiff was forty-eight years of age at the time of his termination.

Plaintiff brings this age discrimination claim because "Mr. [Ernesto] Rosado ["Rosado"], who is younger than Mr. Carfagno and [who] was also using a company owned gas card, was retained [by Poolcorp] whereas Mr. Carfagno was terminated and replaced by a younger employee." *Id.* ¶ 39.  Specifically, after Plaintiff was terminated, he "was replaced by Ryan Davis, an employee who is 15 years younger than Carfagno."  Pl. Resp., Exh. 1, ¶ 39, Doc. 21.  Rosado and Plaintiff were not employed in the same position at Poolcorp.  Rather, Rosado was a warehouse employee and earned less than Plaintiff.  Plaintiff, as an Operations Manager, was at a higher rank in the company hierarchically.

Defendant had a "2011 Employee Handbook in effect at the time of Mr. Carfagno's termination , [which] included an 'Unlawful Harassment Policy' that prohibited discrimination on account of a person's 'age' and provided a means of reporting any unlawful conduct to the human resources department of the Company." Def. Stmt. of Undisputed Facts, ¶ 45. At no point during Plaintiff's employment at Poolcorp did Zita, Fowler, or any other Poolcorp employee make a comment about the Plaintiff's age. Additionally, at all times during his employment with Poolcorp, Plaintiff was an at-will employee.

In addition to the above-mentioned undisputed facts, Plaintiff also alleges that Defendant does not have "an established policy regarding company owned fuel cards." Pl. Resp., Exh. 1, ¶ 20. Further, Plaintiff maintains that he did not receive a copy of the Poolcorp Vehicle Agreement during his employment. *Id.* ¶¶ 20–24. Plaintiff "denie[s] that Fowler's investigation revealed that Carfagno's use of the gas card was without authorization." *Id.* ¶ 26. Rather, "Carfagno informed Fowler that his usage of the card was indeed authorized and that Zita had given him the gas card in 2005." *Id.* Additionally, Plaintiff alleges that at the termination meeting with Fowler and Zita, Plaintiff informed Fowler "that he was authorized by Zita to use the gas card. Fowler, however, chose to disbelieve Carfagno and conducted no investigation whatsoever in order to determine whether Carfagno did have Zita's authorization to use the gas card." *Id.* ¶ 36. Accordingly, the parties disagree as to whether Plaintiff was fired because of his age or because of his alleged unauthorized use of the company-owned fuel card.

## II.    PROCEDURAL HISTORY

On December 6, 2012, Plaintiff filed charges of age discrimination with the United States Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Am. Compl., ¶ 5, Doc. 1. On June 24, 2014, Plaintiff received his Right to Sue

letter.  *Id.*  On August 19, 2014, Plaintiff filed his Complaint against Pool Corporation.  Plaintiff subsequently amended his Complaint on September 12, 2014 to substitute Pool Corporation for SCP Distributors LLC as the defendant in the matter ("Amended Complaint").  Doc. 5.  On September 21, 2015, Defendant filed the instant Motion for Summary Judgment.  Doc. 21.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, courts shall grant summary judgment in favor of the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'"  *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'"  *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250).

The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).  If the movant can sustain its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a *genuine issue for trial.*'"  *Id.*  (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  When assessing the motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party."  *Id.*  Nonetheless, the court must be mindful that, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## IV.     DISCUSSION

The ADEA prohibits an employer from terminating "any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Likewise, under the PHRA, it is illegal "[f]or any employer because of the . . . age . . . of any individual . . . to discharge from employment such individual . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Con. Stat. § 955(a). The Third Circuit "has determined that the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015). Accordingly, this Court will conduct a "single analysis" for Plaintiff's claims under the ADEA and PHRA. *Id.*

In order for the Plaintiff "[t]o succeed on [the] ADEA claim, [he] must establish, by a preponderance of the evidence, that age was the 'but-for' cause of" his termination. *Id.* at 644 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Plaintiff has not provided the Court with direct evidence of age discrimination and instead relies on circumstantial evidence, thus this Court's inquiry is governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under the burden-shifting framework,

> the plaintiff must first establish a *prima facie* case of discrimination. . . . The elements of a *prima facie* case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. . . . Once the plaintiff has successfully established a *prima facie* case creating an inference of discrimination, the burden shifts to the employer who must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir.1999). . . . If the employer satisfies this second step, the burden shifts back once more to the plaintiff to show, by a

6

preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual.

*Id.* (citation omitted). Nevertheless, the burden of persuasion remains with the Plaintiff and "does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180. Accordingly, the Court will determine whether Plaintiff satisfied this burden to preclude the Court from granting summary judgment in favor of Defendant.

### A.   *Prima Facie Case*

First, Plaintiff must demonstrate that he satisfies the four requirements of a prima facie case. *Willis*, 808 F.3d at 644. As explained above, Plaintiff must prove that (1) he is at least forty years old, (2) he suffered an adverse employment decision, (3) he was qualified for the position in question, and (4) he was ultimately replaced by another employee who was sufficiently younger which can support an inference of Defendant's discriminatory motive. *Id.*

Plaintiff was born on April 24, 1964 and was forty-eight years old when he was terminated. Am. Compl. ¶ 7. Therefore, Plaintiff satisfies the requirement that he must be at least forty years old. Likewise, Plaintiff satisfies the requirement that he suffered an adverse employment decision because he was terminated from Poolcorp on September 13, 2012. *Id.* ¶ 15. The parties do not contest the fact that Plaintiff was qualified for the Operations Manager position. Defendant replaced Plaintiff with Ryan Davis as Operations Manager. Pl. Resp., Exh. C, at 29. Mr. Davis was born on April 17, 1979 and is approximately fifteen years younger than Plaintiff. *Id.* Accordingly, Plaintiff satisfies all four elements of a prima facie case and the burden of production shifts to Defendant. *Willis*, 808 F.3d at 644.

B. *Legitimate Non-Discriminatory Reason for Termination*

In order to satisfy its burden, Defendant must articulate a legitimate non-discriminatory reason for Plaintiff's termination. *Id.* At this stage of the litigation, Defendant's "burden is 'relatively light.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Accordingly, Defendant can satisfy its burden if it "provide[s] evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Willis*, 808 F.3d at 644.

In the instant case, Fowler, on behalf of Defendant, maintains that he fired Plaintiff "because [Plaintiff] was using a company fuel card unauthorized for personal reasons." Pl. Resp., Exh. B, at 13. Plaintiff similarly alleges in his Amended Complaint that his "employment was terminated, allegedly for using the company gasoline credit card provided to him in 2005." Am. Compl. ¶ 15. Indeed, Defendant has a "Poolcorp Vehicle Agreement" which provides that the fuel card "**must <u>ONLY</u> be used to purchase fuel for the assigned POOLCORP vehicle**" and "[v]iolation(s) of this provision may result in employment disciplinary action, up to and including termination." Def. Mot. for Summ. J., Exh. 1, at 6. Since unauthorized use of a fuel card may be legitimate grounds for termination, Defendant satisfied its burden.

C. *Pretext*

Lastly, "the burden shifts back once more to [Plaintiff] to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Willis*, 808 F.3d at 644. In order for Plaintiff "to defeat summary judgment . . . [he] must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reason[]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The focus of this

Court's inquiry will not be "whether the employer made the best, or even a sound, business decision; [but] whether the real reason is [discrimination].'" *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). Accordingly, Plaintiff's "evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (emphasis in original). Thus, this Court must determine whether Plaintiff sustained his burden of showing that Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual.

>        i.      Disbelieving Defendant's Legitimate Non-Discriminatory Reason for Termination

The first manner in which Plaintiff may demonstrate that Defendant's reason for terminating Plaintiff was pretextual is by pointing to evidence that would permit the factfinder to reasonably disbelieve Defendant's reason for terminating Plaintiff. *Id.* In order "[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. Instead, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[] for its action that a reasonable factfinder *could* rationally find [it] 'unworthy of credence.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 531 (3d Cir. 1992)). Accordingly, "[i]f a plaintiff comes forward with evidence that would cause a reasonable factfinder to find the defendant's proffered reason 'unworthy of credence,' she need not adduce

9

any evidence of discrimination beyond her prima facie case to survive summary judgment."
*Burton*, 707 F.3d at 430 (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294,
310 (3d Cir. 2012)).  However, it is not for this Court to "'sit as a super-personnel department
that reexamines an entity's business decisions.'"  *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d
326, 332 (3d Cir. 1995) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir.
1992)).  Instead, this Court must determine "'whether the employer gave an honest explanation
of its behavior'" that is not discriminatory.  *Id.* (quoting *McCoy*, 957 F.2d at 373).

In *Willis*, the plaintiff brought an ADEA and PHRA claim against her former employer.
808 F.3d at 641–42.  The defendant denied violating the ADEA and PHRA and maintained that
one of its three proffered legitimate non-discriminatory reasons for terminating Plaintiff was
"that she violated hospital policy by using profanity in close proximity to families and patients."
*Id.* at 647.  The Third Circuit acknowledged plaintiff's argument that other employees used
profanity in the workplace but reasoned that "it matters whether [plaintiff's] use of profanity was
the reason [her supervisor] disciplined [her]."  *Id.*  The court concluded that "[s]ince [plaintiff]
admits to the disciplined conduct, and in light of [the defendant's] goal of maintaining the NICU
as an environment in which patients and their families feel safe, [the plaintiff] has not shown that
[her supervisor's] reason for discipline is so weak as to render it 'unworthy of credence.'"  *Id.* at
647–48 (footnote omitted) (quoting *Fuentes*, 32 F.3d at 765).  Accordingly, the Court found that
the plaintiff's "attempt to cast [the defendant's] articulated reasons as pretext are unsuccessful
because she does not point to evidence that demonstrates [the defendant] did not in fact rely on
its articulated reasons when terminating her employment."  *Id.* at 647.

As stated above, Defendant terminated Plaintiff because of his unauthorized use of the
fuel card.  Plaintiff, however, argues that his use of the fuel card was authorized.  Specifically,

Plaintiff avers that Zita gave him a fuel card and that he did not second guess Zita because Zita, his then-supervisor, said "[H]ere, you're doing a great job, appreciate all the hard work, here's a gas card for you." Pl. Resp., Exh. A, at 101. In the end, however, Fowler found that this argument unsatisfactory, and after interviewing Zita and discussing the matter with Human Resources and the general manager, Fowler terminated Plaintiff. *Id.* Exh. B, at 4. Furthermore, Plaintiff testified at his deposition that he could "agree that Mr. Fowler fired [him] because he didn't believe that [Plaintiff] had authorization to use the fuel card." *Id.* Exh. A, at 128. Similar to the Third Circuit in *Willis*, this Court finds that Plaintiff used the fuel card, that Defendant has a policy against the unauthorized use of a fuel card, and that Plaintiff cannot demonstrate that Fowler's reason for terminating him was "so weak as to render it 'unworthy of credence.'" *Willis*, 808 F.3d at 647 (quoting *Fuentes*, 32 F.3d at 765). The Court need not substitute its judgment on whether the card was authorized or unauthorized as it does not "'reexamine an entity's business decisions.'" *Brewer*, 72 F.3d at 332 (quoting *McCoy*, 957 F.2d at 373). Further, "'no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.'" *Id.* Accordingly, the Court finds that this was Defendant's "honest reason" for terminating Plaintiff and it was not in violation of the ADEA.

In addition to challenging Plaintiff's alleged authorization for the fuel card, Plaintiff also argues that Defendant's failure to reprimand Rosado is evidence that the unauthorized use of a fuel card is not the real reason for Defendant's decision to terminate Plaintiff. Defendant admits that both Plaintiff and Rosado committed a similar offense—the unauthorized use of a fuel card. Defendant, however, did not terminate Rosado; in fact he did not receive any punishment for his usage of the fuel card. Pl. Resp., Exh. D, at 35. Fowler explained that he did not terminate Rosado but rather

11

> excuse[d] [Rosado's] unauthorized use of the gas card. . . . [because] [he] felt that [Rosado] had no understanding that he was in the wrong . . . Ernesto wouldn't have known that it was wrong, because the documentation that says that it's wrong is not something that [Rosado] would have easily have access to. . . . [because] [t]hose documents are provided along with fuel cards, along with company vehicles, and they are also kept in our intranet website, and typically a warehouse person, and I mean typically a large percentage of those employees, don't utilize the intranet or our computer system.

*Id.* Exh. B, at 7.  Further, Fowler maintained that warehouse employees "do not have easy access" to Poolcorp policies, even though, in his opinion, "the company does a good job of making [its] management aware, and that information has to be passed down many times manually." *Id.*

Defendant's decision to terminate Plaintiff and to retain Rosado fails to illustrate that the factfinder should disbelieve Defendant's reason for terminating Plaintiff.  Additionally, Defendant's decision to retain Rosado does not constitute an "inconsistency or contradiction" in Defendant's reason for terminating Plaintiff.  Rather, it is reasonable for an employer to discipline a manager who should have knowledge of company policies, but to be more lenient towards a warehouse worker with limited access to these policies.  Further, as Rosado's supervisor, Plaintiff would typically be the one tasked with informing warehouse associates about the company's policies and procedures.  *Id.*  Therefore, this Court does not find that Defendant's decision to terminate Plaintiff and keep Rosado demonstrates that Defendant's legitimate non-discriminatory reason for terminating Plaintiff is no longer worthy of credence.  Accordingly, Plaintiff fails to point to evidence that the factfinder could reasonably disbelieve that Defendant terminated Plaintiff for his unauthorized use of the fuel card.

ii.    Invidious Discriminatory Reason for Termination

The second manner in which Plaintiff may demonstrate that Defendant's reason for

terminating Plaintiff was pretextual is by pointing to evidence that would permit the factfinder to

"reasonably . . . believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  Plaintiff

"can show pretext this way by presenting evidence 'with sufficient probative force' so as to

allow the factfinder to conclude by a preponderance of the evidence that age was a motivating or

determinative factor.'" *Willis*, 808 F.3d at 645 (quoting *Simpson v. Kay Jewelers, Div. of

Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998)).  Accordingly, Plaintiff may submit

evidence that: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant

discriminated against others within the plaintiff's protected class; or (3) the defendant has treated

similarly situated, substantially younger individuals more favorably" to demonstrate the second

manner of pretext.  *Id.*  Since Plaintiff did not produce evidence that Defendant either previously

discriminated against Plaintiff or others within Plaintiff's protected class, this Court will

determine whether Defendant treated a similarly situated, substantially younger employee more

favorably.

In order to be considered "similarly situated," an "employee does not need to be

identically situated, but the comparator must be similar to plaintiff in 'all relevant respects.'"

*Abdul-Latif v. Cnty.of Lancaster*, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014) (quoting *Wilcher v.

Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011)).  The "[f]actors relevant to the

analysis are whether the employees dealt with the same supervisor, were subject to the same

standards, shared similar job responsibilities and the nature of the misconduct."  *Id.* at 526.

While the issue of "[w]hether comparators are similarly situated is generally a question of fact

13

for the jury. . . . summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Id.*

In the present case, Plaintiff argues that Plaintiff and Rosado are similarly situated because:

> Each of them is accused of precisely the same conduct—unauthorized personal use of a gas card. Each of [them] obtained his gas card from branch management at the same branch and at the same time. Each one used their gas card for a period of many years with the knowledge of Poolcorp management.

Pl. Resp., at 18–19.

Plaintiff's analysis, however, is incomplete. The focus of the Court's inquiry is not solely whether or not Plaintiff and Rosado committed the same infraction, but whether they are "similarly situated" such that they had comparable positions within the company. This Court finds that Plaintiff and Rosado were not similarly situated. While Plaintiff and Rosado technically dealt with the same branch manager, regional manager, and general manager, Rosado was also subject to the supervision of Plaintiff. Plaintiff was Rosado's boss. Further, Plaintiff and Rosado were not subject to the same standards nor did they share similar job responsibilities. As explained earlier, Fowler terminated Plaintiff and not Rosado because Rosado was in a non-management position as a warehouse employee and did not have access to the policies and procedures in the same manner as Plaintiff. Pl. Resp., Exh. B, at 7. Additionally, Plaintiff, as Operations Manager, "would oversee typically what we call the back side of the warehouse, which would be warehouse employees, delivery drivers, fleet trucks; equipment, meaning forklifts, and the physical building itself." *Id.* at 3. In contrast, Rosado "receive[s], pick[s] orders [and] pack[s], load[s] off [and on] trucks. *Id.* Exh. D, at 32. Accordingly, though Plaintiff and Rosado committed a nearly identical infraction—the unauthorized use of a fuel card—they had different roles within PoolCorp such that a jury could not find that they are "similarly

14

situated."  Thus, Plaintiff fails to produce sufficient evidence that the factfinder could reasonably believe "that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*, 32 F.3d at 764.

## V.    CONCLUSION

For the reasons explained herein, this Court concludes that Plaintiff is unable to satisfy its burden of proving that Defendant's reason for terminating Plaintiff was pretextual and in violation of the ADEA and/or PHRA. Accordingly, this Court GRANTS Defendant's motion for summary judgment.  An appropriate order follows.